VICENTE REYNAL ET AL., peticionarios, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. CHARLES FIGUEROA, JUEZ, demandado.

*Número:* O-73-26          *Resuelto:* 15 de mayo de 1974

*Maldonado Guzmán, Villanueva & Lugo,* abogados de los peticionarios; *R. Elfrén Bernier, Plinio Pérez Marrero* y *Hjalmar Flax,* abogados de los interventores.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

La cuestión que suscita este litigio es si la propiedad intelectual en Puerto Rico es únicamente protegible por la legislación de Estados Unidos.

La señora Carmen Ramos de Meléndez escribió y publicó en Puerto Rico en 1965 y 1970 un libro titulado *El Gobierno de Puerto Rico.* En 1972, según las alegaciones de la demanda que pronto se radicaría, los señores Vicente Reynal y Roberto Lugo publicaron otro libro bajo el título de *Manual del Gobierno Civil de Puerto Rico* que, a juicio de la señora Ramos, utiliza sus ideas originales, el plan de presentación del material, las tablas confeccionadas por ella y sus frases y conceptos, resultando en "un mero resumen del libro *El Gobierno de Puerto Rico.*" En consecuencia, el mismo año la señora Ramos y su esposo demandaron en daños y perjuicios por invasión de propiedad intelectual a los señores Reynal y Lugo. En su contestación, los demandados plantearon, entre otras defensas, que la jurisdicción sobre la materia envuelta corresponde exclusivamente al Tribunal de Distrito de los Estados Unidos para Puerto Rico. Señalada una vista para la discusión de esta defensa especial, el tribunal falló que tenía jurisdicción para entender en el caso. Contra esta Resolución del Tribunal Su-

perior acudieron los demandados en solicitud de *certiorari* ante este foro.

■ Consideramos que la legislación federal no provee el único remedio para proteger la propiedad intelectual en Puerto Rico y que su existencia no excluye en toda situación el apoyo que pueda brindarle a tan alto propósito la legislación puertorriqueña.

■ Antes de la Guerra Hispanoamericana, la defensa de los derechos de autor derivaba de muy diversas fuentes, entre otras los Arts. 428 y 429 del Código Civil Español; la Ley sobre Propiedad Intelectual de 10 de enero de 1879 y su Reglamento; los tratados sobre la materia; y del Art. 16 del Código Civil Español, que proveía, en modo parecido a lo dispuesto en el Art. 429, *supra*, que en los casos no previstos ni resueltos por leyes especiales, la deficiencia de éstas se supliría por las disposiciones del Código Civil. Véase: Puig Brutau, Jr.: *Fundamentos de Derecho Civil*, t. III, vol. II, 2ª. ed. (1973), págs. 201–202.

Al advenir el cambio de soberanía, el Art. XIII del Tratado de París y el segundo de la Ley Foraker, Ley de 12 de abril de 1900, cap. 191, sec. 2, 31 Stat. 77, atendieron, respectivamente, el problema de la continuada protección de los derechos de propiedad literaria, artística e industrial de los españoles y de la admisión de sus obras, libres de impuestos, por un número de años. En el Art. 8, más ampliamente, se dispuso por la Ley Foraker que "las leyes y ordenanzas de Puerto Rico actualmente en vigor, continuarán vigentes, excepto en los casos en que sean alteradas o modificadas por la presente; o hayan sido alteradas o modificadas por órdenes militares y decretos vigentes cuando esta Ley entre a regir, y en todo aquello en que las mismas no resulten incompatibles, o en conflicto con las leyes estatutarias de los Estados Unidos no inaplicables localmente, o con las presentes disposiciones, hasta que sean alteradas, enmendadas o

revocadas por la autoridad legislativa creada por la presente para Puerto Rico, o por una ley del Congreso de los Estados Unidos . . . ." Este artículo está hoy en vigor obviamente por razón de lo dispuesto en el Art. 58 de la Ley de Relaciones Federales. Ley de 3 de julio de 1950, cap. 446, Art. 4, 64 Stat. 319. Sobre la historia de este período, consúltese: Berbusse, E. J.: *The United States and Puerto Rico*, 1898–1900, Chapel Hill, Univ. of North Carolina Press, 1966, págs. 83 y ss.

En el Art. 8 citado es que se fundó originalmente la continuada vigencia de nuestro antiguo Código Civil y de otras piezas legislativas de origen español. *Olivieri* v. *Biaggi*, 17 D.P.R. 704 (1911); *Chevremont* v. *Pueblo*, 3 D.P.R. (2ª ed.) 114 (1903); *Muñoz Díaz* v. *Corte*, 42 D.P.R. 384 (1931); *Ex parte Dones*, 10 D.P.R. 179 (1906), confirmado: 202 U.S. 614. Sobre el poder actual de legislar en Puerto Rico sobre estas materias, valga mencionar también, a manera de ejemplo, el Art. 37 de la Ley de Relaciones Federales.

Varias de las disposiciones que antes de la Guerra Hispanoamericana servían de escudo a los derechos de la propiedad intelectual desaparecieron después de 1898, entre ellos, los Arts. 428 y 429 del Código Civil Español, que no se incorporaron a nuestro Código. Sobrevivieron, no obstante, el Art. 16 del Código Civil Español, hoy 12 del nuestro, 31 L.P.R.A. sec. 12; el Art. 1802 de nuestro Código actual, 31 L.P.R.A. sec. 5141; y, por supuesto, todo lo dispuesto en el Código Civil sobre la propiedad en general. 31 L.P.R.A. secs. 1021–2841. Debe señalarse también que nuestra Asamblea Legislativa ha asumido expresamente que tiene poder para legislar sobre la materia. Ley Núm. 5 de 8 de diciembre de 1955, 3 L.P.R.A. sec. 1013(c); Rothenberg, S., *Copyright Law*, Clark Boardman Co., Ltd., N.Y. 1956 (1958 Supp.), pág. 117. Para referirnos tan solo a una de las causas de acción que podrían, por tanto, de justificarlo los hechos, sostener la demanda en este caso bajo la legislación puertorriqueña, baste

con mencionar, a la luz de lo anterior, la de competencia desleal. *Eneglotaria Medicine Co.* v. *Sosa López*, 38 D.P.R. 604 (1928); *Cooperativa Cafeteros* v. *Colón Colón*, 91 D.P.R. 372 (1964).

¿Puede coexistir esta legislación puertorriqueña con la estadounidense sobre el particular?

En *Compco Corp.* v. *Day-Brite Lighting, Inc.*, 376 U.S. 234 (1964) y en *Sears, Roebuck and Co.* v. *Stiffel Co.*, 376 U.S. 225 (1964), el Tribunal Supremo de Estados Unidos se inclinó a favor de la teoría del poder exclusivo del Congreso para legislar sobre esta materia en el caso de los estados, derivándose la alegada necesidad de uniformidad en el campo de lo dispuesto en la Ley norteamericana sobre derechos de autor de la opción a otros remedios que los especificados en la ley federal en el caso de obras no publicadas, Ley del 30 de julio de 1947, c. 392, s. 1, 61 Stat. 652, 17 U.S.C.A. sec. 2; de la disposición sobre jurisdicción de las cortes federales de distrito en casos bajo la ley norteamericana, 28 U.S.C.A. sec. 1338(a); del Art. I, Sec. 8 de la Constitución de Estados Unidos, confiriéndole poder al Congreso para legislar sobre estos asuntos; y de la cláusula de supremacía de dicha Constitución, Art. VI, Cl. 2.

Fuera del hecho de que *Compco* y *Sears* han generado considerable controversia, *A Symposium, "Product Simulation: A Right or a Wrong?"*, 64 Colum. L. Rev. 1178 (1964), ambos casos son distinguibles del presente. La acción estatal en ambos litigios se dirigía fundamentalmente a lograr lo no obtenible bajo la legislación federal o a sentar políticas en conflicto con el gobierno de la federación. En el caso presente ocurre lo contrario: la acción local tiende a reforzar el mismo propósito de la legislación de Estados Unidos: la protección de la propiedad intelectual.

En un caso reciente, *Goldstein* v. *California*, 412 U.S. 546 (1973), se arroja nueva luz sobre el problema. Dice allí el Tribunal Supremo de Estados Unidos:

"La cláusula de la Constitución que le concede facultad al Congreso para reservar derechos de autor no dispone que dicho poder es de la exclusiva competencia del Congreso. Ni tampoco provee la Constitución expresamente que dicho poder no se ejercerá por los estados." (Traducción nuestra, pág. 553.)

Las guías que fija *Goldstein* se reducen básicamente a distinguir entre situaciones en que el ejercicio de poderes concurrentes por el gobierno federal y por un estado conduzcan necesariamente a un conflicto y aquéllas en que el conflicto constituye únicamente una posibilidad.

■ La ley federal sobre derechos de autor se aplica claramente a Puerto Rico bajo las disposiciones del Art. 9 de la Ley de Relaciones Federales. (¹) Los puertorriqueños pueden acogerse a sus beneficios, si así lo desean, o pueden ampararse, según la regla de *Goldstein*, en la legislación local en aquellos casos en que ambas no choquen. En este último caso, el derecho es más limitado, pues la protección que puede conferir un Estado no se extiende más allá de sus fronteras. *Goldstein*, 558. La menor amplitud de este último derecho no borra, sin embargo, su existencia.

Toda invocación de la regla de uniformidad, todo reclamo de poder federal exclusivo para legislar sobre un asunto plantea problemas en extremo complejos aun en el caso de los Estados que son miembros de la Unión. *Goldstein*, 554. La cuestión se torna, por supuesto, más complicada en el caso de Puerto Rico, en vista de la singularidad de nuestras relaciones con Estados Unidos y de las diferencias en nuestra problemática económico-política. En primer lugar, dado lo resuelto en los Casos Insulares (²) y lo dispuesto en el Art. 8 de la Ley Foraker y los Arts. 9 y 37 de la Ley de Relaciones

---

(¹) *United States* v. *Ríos*, 140 F.Supp. 376 (D.P.R. 1956); *Consentino* v. *I.L.A.*, 126 F.Supp. 420 (D.P.R. 1954).

(²) Véanse: *Downes* v. *Bidwell*, 182 U.S. 244 (1901); *Dooley* v. *United States*, 182 U.S. 222 (1901); *De Lima* v. *Bidwell*, 182 U.S. 1 (1901), y los casos relacionados con éstos.

Federales, precisa determinar si la disposición constitucional o legal en cuestión se aplica en Puerto Rico. En segundo término, es indispensable resolver si las realidades envueltas convierten la legislación federal en materia localmente inaplicable. No es necesario adentrarse aquí más en este tema pues, aun considerando a Puerto Rico un estado federado para los propósitos de este litigio, la coexistencia de poderes es palpable para legislar, bajo normas que no provoquen necesariamente conflictos con la legislación estadounidense, en el campo de la propiedad intelectual.

Desde hace muchos años, el Tribunal Supremo de Estados Unidos se pronunció, en el caso de la legislación contra los monopolios, a favor de una amplia política de coexistencia de poderes. *People of Puerto Rico* v. *Shell Co. (P.R.) Ltd.*, 302 U.S. 253 (1937). En el terreno de las marcas de fábrica, coexiste la legislación puertorriqueña con la estadounidense. *Eneglotaria* y *Cooperativa, ante.* Si la competencia y la producción comercial pueden ser objeto de doble protección, no vemos razón alguna para tratar en modo inferior la producción literaria y artística. Para casos análogos, véanse: *Bordas & Co.* v. *Srio. de Agricultura*, 87 D.P.R. 534 (1963) y *García Mercado* v. *Tribunal Superior*, 99 D.P.R. 293 (1970).

Por los fundamentos expuestos, *se confirma la resolución del tribunal de instancia y se devuelve el caso para procedimientos ulteriores consistentes con esta opinión.*