JULIO E. PANCORBO y OTROS, demandantes y recurrentes, *v.* WOMETCO DE PUERTO RICO, INC. y OTROS, demandados y recurridos.

*Número:* R-84-21 *Resuelto:* 4 de junio de 1984

496

*Aurelio Gracia Morales,* abogado de los recurrentes; *Salvador Antonetti, Mario Arroyo Dávila* y *Diego A. Ramos,* de *Fiddler, González & Rodríguez,* abogados de los recurridos.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

En *Reynal* v. *Tribunal Superior,* 102 D.P.R. 260 (1974), examinamos la cuestión de si la propiedad intelectual en Puerto Rico dependía para su protección exclusivamente de la legislación federal de entonces. En *Ossorio Ruiz* v. *Srio. de la Vivienda,* 106 D.P.R. 49 (1977), nos expresamos sobre la doctrina del derecho moral de los autores. Poco después, el 1 de enero de 1978, entró en vigor una nueva ley estadounidense sobre la propiedad intelectual. 90 Stat. 2598, 17 U.S.C. sec. 101 *et seq.* (1976). El caso actual plantea la necesidad de esclarecer el efecto de esta legislación en Puerto Rico sobre algunos aspectos del derecho de autor.

Para fines de 1980, Julio Enrique Pancorbo y Alfonso Gende Casanova, artistas conocidos bajo el nombre de Henry Lafont y El Casanova, respectivamente, demandaron a Wometco de Puerto Rico, Metro Goldwyn Mayer, United Artists y otros. Los demandantes alegaron que los demandados estaban exhibiendo sin su autorización una obra cinematográfica, *Fame,* en que aparecen aquellos ocupando totalmente la pantalla por buena parte de unos setenta segundos. Reclamaron $500,000 por concepto de daños, más 5% del total de los ingresos percibidos por los demandados con motivo de la exhibición de la película. Los demandados solicitaron sentencia sumaria por entender que la nueva legislación federal ha ocupado el campo. Los demandantes se opusieron.

De la documentación en autos surgen los hechos adicionales siguientes. En agosto de 1978, luego de entrar en vigor

la ley federal, El Casanova y Henry Lafont grabaron en video-cinta un programa de televisión. La duración del programa era de 44 minutos. La cinta fue vendida a una transmisora de Estados Unidos. Por medios que no surgen de autos, los productores de la película *Fame* obtuvieron acceso a la cinta e intercalaron en ella, sin el conocimiento o autorización de los demandantes, setenta segundos de la obra. La oposición de los demandantes a la sentencia sumaria se fundó, entre otros argumentos, en la alegación de que su derecho moral ha sido violado.

El Tribunal Superior resolvió que "Estando el campo ocupado y el derecho local pertinente desplazado y abolido por una legislación especial cuya aplicación compete exclu-sivamente a los tribunales federales, carecemos de jurisdic-ción sobre la materia . . .". Dictó, por tanto, sentencia a favor de los demandados. Acordamos revisar.

■ La nueva ley federal, como la anterior, se aplica expresamente a Puerto Rico. 17 U.S.C. sec. 101 (1976). Tal ley efectúa cambios significativos en el ámbito de protección del derecho del autor. Amplía considerablemente la protec-ción federal del derecho, mas en modo alguno ocupa por completo el campo y excluye toda acción estatal. Véase el historial legislativo del S. 22, H.R. Rep. No. 94–1476, 94th Cong., 2d Sess. 301, *reprinted in* 1976 U.S. Code Cong. & Ad. News 5745–5749, 5819. El Art. 301 (17 U.S.C. sec. 301 (1976)), de la nueva ley describe los límites de la exclusi-vidad federal. Los apartados (a) y (b) de este artículo dis-ponen:

(a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is

entitled to any such right or equivalent right in any such work. under the common law or statutes of any State.

(b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to —

(1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or

(2) any cause of action arising from undertakings commenced before January 1, 1978; or

(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.

■ Como puede verse, la ley federal gobierna exclusivamente tan sólo "los derechos legales o en equidad equivalentes a cualquiera de los derechos exclusivos, dentro del ámbito general del derecho de autor, especificados en el artículo 106". El Art. 106 provee:

Subject to sections 107 through 118, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; and

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly.

■ Nimmer señala que la causa de acción estatal no queda excluida si su prueba requiere elementos adicionales

o distintos a los constitutivos de los actos que enumera el Art. 106. Algunos ejemplos de acciones estatales reconocidamente no afectadas por la nueva ley federal son las fundadas en la violación de un contrato o de una relación fiduciaria, la invasión de la intimidad, la difamación, las prácticas comerciales engañosas. 1 *Nimmer on Copyright* 1-9 *et seq.* (1979). Véanse: L. Jorgensen & M. McIntyre-Cecil, *The Evolution of the Preemption Doctrine and its Effect on Common Law Remedies,* 19 Idaho L. Rev. 85, 101 *et seq.* (1983); Comentario, *The Fine Art of Preemption: Section 301 and the Copyright Act of 1976,* 60 Or. L. Rev. 287 (1981); G. Katz, *Copyright Preemption Under the Copyright Act of 1976: The Case of "Droit de Suite",* 47 Geo. Wash. L. Rev. 200, 211 *et seq.* (1978). En otras palabras, si el interés que se desea proteger localmente es distinto a aquellos que el estatuto federal protege, la acción estatal no queda desplazada. Jorgensen & McIntyre-Cecil, *op. cit.,* págs. 101–102. Desde otro punto de vista, si la acción estatal intenta proteger derechos que radican fuera del ámbito de la política federal y si tales derechos tienen por fuente intereses locales de honda raíz, la acción local persiste. Nota, *An Author's Artistic Reputation under the Copyright Act of 1976,* 92 Harv. L. Rev. 1490, 1509 (1979).

 El caso del derecho moral es particularmente claro en lo que respecta a la exposición de la regla general. La doctrina es de estirpe civilista. Para su extensa historia, véase: S. Strömholm, *Le Droit Moral de l'Auteur,* Stockholm, Ed. P.A. Norstedt & Söners Förlag, Vol. 1, 1967. El concepto de la propiedad intelectual comprende dos categorías de derechos: los de índole económica o patrimonial y los extrapatrimoniales, vinculados a la personalidad del autor. La doctrina del derecho moral atañe a estos últimos. J. Castán Tobeñas, *Derecho civil español, común y foral,* Madrid, Ed. Reus, 1982, T. 1, Vol. 2, págs. 391–393.

 La legislación norteamericana se ha concentrado históricamente en la protección del aspecto económico de la

propiedad intelectual. La nueva ley federal no altera bási-
camente ese enfoque. Aunque a veces se ha argumentado
que el Derecho norteamericano ha ido reconociendo a través
de los años, con etiquetas, condiciones y propósitos distintos,
elementos aislados de la doctrina civilista del derecho moral,
ésta no se ha adoptado por la ley federal ni hay indicación
alguna en el historial legislativo de la intención de prohibir
su aceptación por los estados o su permanencia donde exista.
J. G. Petrovich, *Artists' Statutory "Droit Moral" in Califor-
nia: A Critical Appraisal*, 15 Loy. L.A.L. Rev. 29 (1981);
Katz, *op. cit.*, 217-218; K. Gantz, *Protecting Artists' Moral
Rights: A Critique of the California Art Preservation Act as
a Model for Statutory Reform*, 49 Geo. Wash. L. Rev. 873, 879
(1981). ("Federal copyright law neither recognizes moral
rights nor provides a basis for redress of their violation.")
No existe base en derecho para sostener que la nueva legis-
lación federal sobre el derecho de autor ha abolido la doc-
trina del derecho moral en Puerto Rico.

La interpretación anterior explica por qué algunos
estados han estatuido la doctrina civilista del derecho moral
o rasgos vitales de ésta después de la aprobación de la ley
federal. *The California Art Preservation Act*, Cal. Civ. Code
Sec. 987 (West 1982), vigente desde el 1 de enero de 1980;
N.Y. Arts and Cultural Affairs Law Sec. 3B (McKinney
1984), vigente desde el 31 de diciembre de 1983.

Veamos la aplicación a este caso de los princi-
pios expuestos. El hecho de que los demandantes hayan ven-
dido la videocinta no tiene pertinencia alguna al ejercicio de
su derecho moral. El derecho moral de autor es inalienable e
imprescriptible. Castán Tobeñas, *op. cit.*, pág. 392; D. Espín,
*Manual de Derecho Civil Español*, 6ta ed., Madrid, Ed. Rev.
Der. Privado, 1981, Vol. II, pág. 306; C. Colombet, *Propriété
Littéraire et Artistique*, Paris, Ed. Dalloz, 1976, págs. 128-
129. Entre otros intereses, el derecho moral salvaguarda la
paternidad de la obra y su integridad. La defensa de esa
integridad incluye el derecho a impedir que la obra sea

alterada, deformada, truncada o expuesta en un contexto objetable. Castán Tobeñas, *op. cit.*, págs. 391-393; *An Author's Artistic Reputation*, supra, págs. 1490, 1493; Encyclopédie Dalloz, *Propriété Littéraire et Artistique*, VI Rép. Droit Civ., párr. 628 (1974).

Ahora bien, el derecho moral no provee base legal suficiente para invocar derechos económicos como tales. Los demandantes no tienen fundamento alguno para reclamar en los tribunales de Puerto Rico regalías derivables del alegado enriquecimiento injusto de los demandados u otra compensación fundada en la violación de un derecho patrimonial reconocido federalmente. En lo que respecta a los derechos patrimoniales equivalentes a los derechos protegidos por la ley federal el campo está claramente ocupado.(¹)

Ello no quiere decir que la violación de derechos extrapatrimoniales nunca puede entrañar la concesión de daños pecuniarios. La infracción de esos derechos puede generar, además de obligaciones de hacer o no hacer, el resarcimiento de daños de orden moral. La medida del daño en tal caso no es el daño económico infligido. La medida es el daño espiritual y social sufrido, con atención a que el derecho moral de los autores puede desvanecerse si las sanciones que se imponen no son eficaces. Véanse: P. I. Medina Pérez, *El derecho de autor en la cinematografía*, 191 Rev. Gen. Leg. Jur. 659, 680-682 (1952); J. Pérez Serrano, *El derecho moral de los autores*, 2 An. Der. Civ. 7, 23 (1949); J. Giménez Bayo y L. Rodríguez-Arias Bustamante, *La Propiedad Intelectual*, Madrid, Ed. Reus, 1949, págs. 109-110; S. del Tribunal Supremo de España de 4 de abril de 1936, núm. 955, Aranzadi, V Repertorio de Jurisprudencia 486; Strömholm, *op. cit.*, 1967, Vol. 2, T. 1, págs, 232-263; Strömholm, *op. cit.*, 1973, Vol. 2, T. 2, págs. 47, 91, 354, 396 y 562; R. Nicolo y M.

---

(¹)Puede darse concebiblemente la situación de que un mismo acto infrinja derechos patrimoniales y extrapatrimoniales. Esto no es óbice para la vindicación local de los segundos, ni para los patrimoniales no cubiertos por la ley federal.

Stella Richter, *Ressegna di Giurisprudenza sul Codice Civile*, Milano, Ed. Giuffrè, 1969, Vol. 5, T. 3, pág. 407 *et seq.* Entre los remedios que proveen las leyes de California y Nueva York citadas se cuenta el resarcimiento de daños.

 Los artistas demandantes en este caso han alegado en su oposición a la moción de sentencia sumaria la violación de su derecho a la paternidad e integridad de su obra. Han establecido prima facie violaciones a su derecho moral de autores, no desplazadas por la legislación federal. Estas alegaciones deben ventilarse en su fondo, junto a la cuestión de los daños y otras medidas que puedan proceder.

*Se revocará la sentencia recurrida y se devolverá el caso a instancia para procedimientos ulteriores compatibles con esta opinión.*

El Juez Asociado Señor Negrón García se inhibió. El Juez Asociado Señor Rebollo López concurre en el resultado sin opinión.