# 2000 DTA 100

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL III DE ARECIBO Y UTUADO**

LUCY CHAVEZ BUTLER
Demandante-Peticionaria

v.

RAFAEL VENEGAS HERNANDEZ Y OTROS
Demandados-Promovidos

Núm. KLCE-99-01206

San Juan, Puerto Rico, a 28 de enero de 2000

Panel integrado por su Presidenta, Juez Pesante Martínez
y los Jueces Martínez Torres y Salas Soler

Salas Soler, Juez Ponente

 

**TEXTO COMPLETO DE LA RESOLUCION**

**I**

La peticionaria, Lucy Chavez Butler (Chavez o la peticionaria), nos solicita la revisión de una resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Arecibo, el 22 de septiembre de 1999, archivada en autos copia de su notificación el 28 de septiembre del mismo año. Mediante el referido dictamen el hermano foro de instancia declaró *"No Ha Lugar"* una *"Moción de Desestimación por Falta de Jurisdicción sobre la Materia"*. En síntesis, el foro de instancia determinó que la explotación de la obra musical de Guillermo Venegas Lloveras es un derecho patrimonial cuya jurisdicción está ocupada por el Federal Copyright Act de 1976, 17 U.S.C. sec. 101 *et. seq.* y que la determinación de si la obra es privativa o ganancial, no está

relacionada con la explotación de la misma.

El 29 de septiembre de 1999, Chavez presentó una *"Moción Solicitando Reconsideración"*, la cual fue declarada *"No Ha Lugar"* mediante resolución con fecha de 4 de octubre de 1999y archivada en autos copia de su notificación el 7 de octubre de 1999.

La adjudicación recta y justiciera de la presente controversia nos obliga a exponer cuidadosamente su trasfondo procesal y fáctico.

Don Guillermo Venegas Lloveras, afamado autor [1] de miles de composiciones musicales, falleció el 23 de julio de 1993. Antes de su muerte, el 13 de mayo de 1992, don Guillermo Venegas otorgó un testamento abierto en el cual instituyó como herederos a título universal a sus hijos: Guillermo Venegas Hernández, Rafael Venegas Hernández, María del Carmen Venegas Hernández y Yeramar Venegas Velázquez (en adelante los recurridos). En cuanto al tercio de libre disposición, éste le fue concedido en su totalidad a su cuarta esposa y viuda bajo la ley, la Sra. Lucy Chavez Butler, a quien también nombró albacea de los bienes. Especificó que dicho tercio de libre disposición fuera pagado en su totalidad con un inmueble de su propiedad sito en el pueblo de Quebradillas.

Luego de la muerte de don Guillermo, se concertaron varias reuniones entre los herederos con el propósito de dividir la herencia. Aunque surgieron varios desacuerdos entre los herederos, la peticionaria, junto con los recurridos, firmaron un acuerdo a los fines de poder dividir la herencia. En el mismo, la peticionaria de forma expresa renunció a toda participación en la obra musical de don Guillermo Venegas. Alegadamente, dicho acuerdo no se llegó a consumar debido a que Rafael Venegas Hernández no quiso cumplir con los compromisos a los cuales se obligó en el referido acuerdo.

Así las cosas, el 20 de octubre de 1997, Chavez presentó una demanda sobre Sentencia Declaratoria y Acción Civil en la cual solicitaba del foro de instancia que determinara su participación en el caudal hereditario de don Guillermo con el fin de terminar la comunidad de bienes existente entre ella y los co-herederos recurridos. La peticionaria reclamó además, *"que en adición a su participación ganancial la parte demandante es acreedora de un tercio de la participación del causante, a tenor con la cláusula del testamento que le otorga el tercio de libre disposición de los bienes del caudal."*

Oportunamente, los aquí recurridos contestaron la demanda. En dicho escrito, los recurridos esbozaron varias defensas afirmativas; entre ellas, *"que los derechos de autor sobre las canciones compuestas por don Guillermo Venegas no son gananciales según la ley local y la Ley de Derechos de Autor Federal (Federal Copyright Act), 17 U.S.C. sec. 101 et seq., incluyendo el que la mayoría de las composiciones musicales fueron compuestas antes del matrimonio de la demandante (Chavez) y el causante Guillermo Venegas."*

Al mismo tiempo, los recurridos presentaron una reconvención en la cual alegaron que la aquí peticionaria. actuando como albacea de los bienes, había acordado con ellos que todos los derechos sobre la obra musical sería adjudicada a éstos. Alegaron, además, que el causante (Guillermo Venegas) dejó en su testamento a la aquí peticionaria el tercio de libre disposición, especificando que el mismo sería pagado en su totalidad con un inmueble sito en Quebradillas cuyo valor cubre y supera dicho tercio de libre disposición. Adujeron que la peticionaria, ilegal y negligentemente y en contra de los acuerdos entre las partes, ha seguido administrando, licenciando y enajenando los derechos autorales de la referida obra musical.

El 18 de septiembre de 1998, la peticionaria presentó un escrito titulado *"Moción Solicitando Desestimación por Falta de Jurisdicción Sobre la Materia"*, en donde alegó que los derechos que reclaman los aquí recurridos son derechos patrimoniales de autor, por lo que el campo está ocupado por el Federal Copyright Act, *supra.*

Los recurridos se opusieron argumentando que el presente caso trata, en esencia, sobre la adjudicación y división de la herencia de don Guillermo Venegas entre la peticionaria y los aquí recurridos. En consecuencia, no se trata de un caso, en sus orígenes, de violación de derechos patrimoniales de autor.

El 8 de diciembre de 1998, los recurridos presentaron una Demanda contra Tercero contra la Asociación de Compositores y Editores de Música Latinoamericana de Puerto Rico Inc. (ACEMLA de Puerto Rico), José R. Lacomba Colón y la Sociedad de Bienes Gananciales compuesta por éste y la aquí peticionaria. Adujeron en la misma que los terceros demandados, *"de modo craso y negligente indujeron a la peticionaria a firmar un acuerdo inválido e ilegal concediendo los derechos sobre toda la obra musical del causante a la tercera demandada ACEMLA de Puerto Rico, Inc. Reclamaron una compensación por unos alegados daños económicos y morales sufridos, debido a que los terceros demandados se habían alegadamente apropiado de todos los beneficios económicos derivados de la obra musical del causante."*

Con fecha de 22 de septiembre de 1999, el foro de instancia emitió una primera resolución en la cual, en esencia, resolvió que la obra musical de Don Guillermo Venegas es privativa, razón por la cual al éste morir, los derechos sobre la misma recae sobre sus derecho-habientes. Concluyó, además, que en cuanto a la alegación de los aquí recurridos en torno a la forma en la cual la aquí peticionaria ha estado licenciando y administrando los derechos autorales sobre la mencionada obra musical, no tenía jurisdicción. Esto es porque al tratarse de derechos patrimoniales sobre la mencionada obra, el campo está ocupado por la ley federal de derechos de autor *"Federal Copyright Act", supra.*

Oportunamente, la peticionaria solicitó reconsideración, la cual fue declarada *"No Ha Lugar"* mediante resolución de 4 de octubre de 1999.

Inconforme con dicha determinación, la peticionaria acude ante nos mediante el presente recurso, imputándole al foro de instaricia la comisión de tres errores, los cuales transcritos literalmente leen como sigue:

*"Erró el Honorable Tribunal de Instancia al determinar el carácter ganancial o privativo de la obra de Guillermo Venegas Lloveras, ya que dicha determinación es una de carácter patrimonial sobre la cual carece de jurisdicción sobre la materia y además es contraria al texto expreso de la Federal Copyright Act."*

*"Erró el Honorable Tribunal de Instancia al determinar que la obra de Guillermo Venegas LLoveras es un bien privativo, por ser dicha determinación contraria a lo dispuesto en el Artículo 1301 del Código Civil."*

*"Erró el Honorable Tribunal de Instancia al determinar que los bienes en controversia son privativos o gananciales sin haber recibido prueba alguna al respecto y cuando lo planteado a su consideración era una solicitud de desestimación contra las alegaciones, por falta de jurisdicción sobre la materia y dicha determinación es precisamente el objeto de la solicitud de sentencia declaratoria que dio origen al pleito."*

En síntesis, alega la peticionaria que el ilustrado foro de instancia erró al determinar el carácter privativo de la obra musical de don Guillermo Venegas, siendo dicha determinación una de carácter patrimonial donde el foro de instancia no tiene jurisdicción por haber ocupado el campo la ley federal. Por estar los errores señalados relacionados entre sí, procederemos a discutirlos de forma conjunta.

## II

Un análisis integral del caso traído ante nuestra consideración, nos lleva a coincidir con la resolución emitida por el ilustrado foro de instancia. Veamos porqué.

Los derechos de autores, artistas, compositores, cineastas y demás integrantes de la comunidad intelectual de Puerto Rico están fundamentalmente protegidos por dos piezas legislativas: la *"Federal Copyright Act", supra,* y la Ley de Propiedad Intelectual de Puerto Rico, Ley Núm. 96 de 15 de julio de 1988, 31 L.P.R.A.

§1401 *et seq.* Por otra parte, conforme lo resuelto por el Tribunal Supremo de Puerto Rico en el caso de *Reynal v. Tribunal Superior,* 102 D.P.R. 260 (1974), aplican de manera supletoria a cualquier controversia sobre propiedad intelectual, las disposiciones del Código Civil de Puerto Rico que no sean incompatibles con la legislación federal sobre esta materia. Véase *Cotto Morales v. Calo Ríos,* ___ D.P.R. ___, Op. de 17 de abril de 1996, **96 J.T.S. 56.**

La Propiedad Intelectual se define como el conjunto de derechos que la ley reconoce al autor sobre obras que ha producido con su inteligencia, en especial, los de que su paternidad le sea reconocida y respetada, así como que se le permita difundir la obra, autorizando o negando en su caso la reproducción. José Puig Brutau, *Fundamentos de Derecho Civil,* Tomo III, Barcelona, Bosch, 1973, págs. 200-201.

En Puerto Rico, la propiedad intelectual o derechos de autor está formada por la imbricación de dos derechos de naturaleza diferente: el derecho moral, que de manera primordial protege el vínculo personal entre el autor y su obra, y el derecho patrimonial, que consiste en el monopolio de la explotación de la obra. *Cotto Morales y otros v. Calo Ríos, supra.*

La doctrina de *"campo ocupado"* tiene su génesis en la cláusula de supremacía de la Constitución Federal, Const. E.U.A. Art. VI, Cl. 2, en la que se dispone que la ley federal tendrá supremacía sobre las leyes estatales. [2] Sin embargo, el Tribunal Supremo Federal ha resuelto que la delegación de poderes bajo los cuales el Congreso aprobó la *"Federal Copyright Act",* no son exclusivos y, por ende, de darse las condiciones adecuadas, las leyes estatales pueden coexistir con las federales en el área de los derechos de autor. *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470 (1974). Tal visión tiene su fundamento en que la apreciación de los logros intelectuales varían de estado a estado, dado el hecho de la gran diversidad de intereses que forman la nación americana. *Kewanee Oil Co. v. Bicron Corp., supra.* No obstante, se pueden suscitar situaciones en las que un estatuto federal no pueda coexistir con un estatuto estatal, en cuyo caso, la ley estatal puede invalidarse siguiendo varias alternativas. Primero, el Congreso puede declarar su intención específica de *"ocupar el campo"* en un área particular a reglamentarse. Segundo, de no haber una declaración expresa por parte del Congreso, se puede ocupar el campo si la reglamentación federal es tan abarcadora que no cabe duda que la intención federal era reglamentar la totalidad del área, y no es posible ninguna otra reglamentación estatal. Finalmente, una ley estatal puede ser invalidada si conflige directamente con un estatuto federal. *Puerto Rico Dep't. of Consumer Affairs v. Isla Petroleum Corp.,* 485 U.S. 495 (1988).

En el caso de *Bordas Co. v. Secretario de Agricultura,* 87 D.P.R. 534 (1963), nuestro más alto foro resolvió que *"[n]o se presumirá que la reglamentación federal sustituye a la reglamentación estatal por el hecho de que el Congreso reglamente un área de forma limitada. Para que así sea, es necesario que la ley del Congreso interpretada razonablemente esté en conflicto real con la ley del estado. En ausencia de una prohibición específica en la ley federal contra una ley local, la legislación insular que complementa la ley federal es válida, siempre y cuando que la primera no esté sustancialmente en conflicto con la segunda."*

Por su parte, en el caso de *Pancorbo v. Wometco de P.R., Inc.,* 115 D.P.R. 495 (1984), el Tribunal Supremo de Puerto Rico resolvió que en nuestra jurisdicción, la *"Federal Copyright Act", supra,* ocupa el campo en el aspecto de los derechos patrimoniales de autor. Sobre este particular, nuestro más alto foro se expresó en los siguientes términos:

*"[...] Los demandantes no tienen fundamento alguno para reclamar en los tribunales de Puerto Rico regalías derivables del alegado enriquecimiento injusto de los demandados u otra compensación fundada en la violación de un derecho patrimonial reconocido federalmente. En lo que respecta a los derechos patrimoniales equivalentes a los derechos protegidos por la Ley Federal, el campo está claramente ocupado."*

Según lo antes expuesto, la Sección 301(a) de la *"Federal Copyright Act", supra,* dispone que:

*"(a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by section 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such work under the common law or statutes of any State."*

Como puede verse, la *"Federal Copyright Act"* gobierna exclusivamente tan sólo los derechos legales o en equidad equivalentes a cualquiera de los derechos exclusivos, dentro del ámbito general del derecho de autor, especificados en la sección 106 de la referida Ley, que en lo pertinente dispone:

*"Subject to sections 107 through 118, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:*

*(1) to reproduce the copyrighted work in copies or phonorecords;*

*(2) to prepare derivative works based upon the copyrighted work;*

*(3) to distribute copies or phonorecords of the copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending;*

*(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; and*

*(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly".*

Claramente puede concluirse que el alcance de la legislación federal es uno estrictamente patrimonial, orientado única y exclusivamente a la explotación comercial de la obra protegida por el estatuto federal.

En ese sentido, actuó correctamente el ilustrado foro de instancia al declararse sin jurisdicción en cuanto a la reclamación sobre derechos patrimoniales hecha por los recurridos en el caso de epígrafe por la alegada explotación económica ilegal que hace la peticionaria de la obra musical de don Guillermo Venegas.

La peticionaria argumenta en su escrito que la adjudicación que hizo el ilustrado foro de instancia sobre el carácter privativo de los derechos de autor de la referida obra musical, es una de carácter patrimonial. Por dicha razón, arguye que los tribunales de Puerto Rico carecen de jurisdicción y que, en última instancia, el estatuto federal expresamente le adjudica derechos sobre la mencionada obra. Señala, además, que la determinación sobre el carácter privativo de la antes mencionada obra musical es contraria a lo dispuesto en el Artículo 1301 del Código Civil de Puerto Rico. No le asiste la razón. Explicamos.

Como antes expresáramos, la legislación insular que complementa la ley federal es válida siempre y cuando la primera no esté sustancialmente en conflicto con la segunda. La ley federal gobierna exclusivamente tan sólo los derechos legales o en equidad equivalentes a cualquiera de los derechos exclusivos, dentro del ámbito general del derecho de autor. Si la acción estatal intenta proteger derechos que radican fuera del ámbito de la política federal y si tales derechos tienen por fuente intereses locales de honda raíz, la misma no está desplazada por la legislación federal. *Pancorbo v. Wometco de P.R., Inc., supra.*

Así, por ejemplo, y al igual que en el caso que nos ocupa, las disposiciones legales que rigen el Derecho de Sucesiones son de la exclusiva jurisdicción de las cortes estatales. La Sección 201 (d)(1) de la *"Federal Copyright Act"* expresamente establece que los derechos de autor pueden ser transmitidos por testamento o

mediante la aplicación de las leyes que regulan la transmisión de derechos en los casos de la sucesión intestada. La ley a aplicarse será la del domicilio del causante. *Craft v. Kobler*, 667 F. Supp. 120 (1987). En ese sentido, ha sido reconocido que las cortes estatales tienen jurisdicción exclusiva para la validación y ejecución de testamentos en los cuales se disponga de propiedad intelectual. Nimmer M.B., *Nimmer on Copyright*, 1993, Matthew Bender, Vol. III, §10.06; *Motta v. Samuel Weiser Inc.*, 768 F.2d 481, (1st Circuit 1985) *cert*. denied 474 U.S. 1033 (1985); *Republic Pictures Corp. v. Security First Nat'l Bank of Los Angeles*, 197 F.2d 767 (9th Circuit 1952).

De otra parte, el Artículo 252 del Código Civil de Puerto Rico nos dice que *"la palabra bienes es aplicable, en términos generales, a cualquier cosa que puede constituir riqueza o fortuna. Esta palabra hace relación al mismo tiempo a la palabra cosas que constituye el segundo objeto de la interpretación jurisprudencial, según la cual sus principios y reglas se refieren a las personas, a las cosas y a las acciones."* 31 L.P.R.A. §1021; *Díaz v. Alcalá*, ___ D.P.R. ___, Op. de 28 de mayo de 1996, **96 J.T.S. 79.**

A tono con dicha definición, podemos concluir que el derecho de autor sobre la obra musical de don Guillermo Venegas, puede quedar enmarcado dentro de la definición legal de *"bienes"*, pues *"constituye riqueza o fortuna"* y es susceptible de apropiación.

De otra parte, el Artículo 1301 del Código Civil de Puerto Rico declara que son bienes gananciales, entre otros, *"los obtenidos por la industria, sueldo o trabajo de los cónyuges o de cualquiera de ellos"* y *"los frutos, rentas o intereses percibidos o devengados durante el matrimonio, procedentes de los bienes comunes o de los peculiares de cada uno de los cónyuges."* 31 L.P.R.A. §3641. Todos los bienes matrimoniales se reputan gananciales *"mientras no se pruebe que pertenecen privativamente al marido o a la mujer"*. Art. 1307; 31 L.P. R.A. § 3647; *Universal Funding Corp. v. Registrador*, Op. de 7 de junio de 1993, **93 J.T.S. 90.** Sin embargo, en el caso de *García v. Montero Saldaña*, 107 D.P.R. 319 (1978), el Tribunal Supremo de Puerto Rico resolvió que la cualidad de ganancial de dichos bienes se trata de una presunción controvertible.

No obstante, hay bienes que por su naturaleza personalísima son exclusivos de su titular, aunque para su consecución se hubieren destinado fondos del caudal común o empleado la industria, sueldo o trabajo de uno o ambos cónyuges. Estos están tan inextricablemente atados a las cualidades inmanentes a la persona, que no podrían ser calificados propiamente como *"gananciales"*. *Díaz v. Alcalá, supra.*

Si bien nuestro Código Civil no señala como privativos o gananciales los derechos patrimoniales inherentes a la persona, su naturaleza, consistente en ser consustanciales a su titular, apunta a su carácter privativo. *Díaz v. Alcalá, supra.*

Concluimos, por tanto, que esa es la situación que ocurre con los derechos de autor comprendidos dentro del ámbito de la propiedad intelectual. Sabido es que el autor, compositor o creador de una obra de arte, hace la misma a base de su capacidad, destrezas y talento personal innato. A pesar de que el título de la misma pueda ser enajenado, como muy bien argumenta la peticionaria, dicho hecho de por sí no le quita su carácter y naturaleza personal. De hecho, el insigne tratadista español Diego Espín Cánovas en su artículo Derechos de un Ex-Cónyuge sobre la Propiedad Intelectual del Otro Adquirida Durante el Matrimonio, 25 Rev. Jur. U.I.A. 421 (1991), se expresa en los siguientes términos:

*"Las facultades patrimoniales de explotación de la obra, si bien son cedibles no pueden serlo sin previa decisión de divulgar la obra; dichas facultades de explotación, pese a su carácter patrimonial no constituyen aisladamente un objeto, no son un bien jurídico independiente de las facultades personales o derecho moral, sino dependiente de éste mientras viva el autor que puede decidir no divulgar de nuevo una vez agotada la edición de una obra literaria o no representarla más e incluso retirarla de la circulación ejerciendo su derecho de arrenpentimiento."*

Resulta persuasivo lo expuesto por el mismo autor más adelante en su artículo:

*"Fácilmente se deduce de la anterior exposición que, pese a la estructura dualista de la propiedad intelectual en la Ley española, no puede atribuirse a la sociedad de gananciales la explotación económica de la propiedad intelectual creada por un cónyuge. Sólo los beneficios que el cónyuge-autor obtenga con la explotación de su obra pertenecen a la sociedad de gananciales como frutos de bienes propios del mismo autor."*

*Se rechaza de este modo la caracterización de esta propiedad como bienes comunes adquiridos por la industria o trabajo de cualquiera de los cónyuges (Art. 1347 núm. 1ro CC).*

*Esta tesis de la consideración unitaria del derecho de autor considerándolo como bien propio del cónyuge autor, lo que impide su atribución a la sociedad de gananciales, ni siquiera en cuanto a la facultad de explotación de la obra, ya fue sostenida aunque aisladamente en la doctrina española anterior a la reforma del Código Civil por ley de 13-mayo-1981."*

De lo anteriormente expuesto, se puede concluir de forma definitiva que los derechos de autor sobre la obra musical de don Guillermo Venegas es un bien privativo inherente a su persona. A lo que tendría derecho la peticionaria es a los frutos generados por la explotación de dichos derechos mientras estuvo vigente el matrimonio.

Como muy bien se desprende del testamento otorgado por éste y del acuerdo suscrito por las partes para la partición de la herencia, la obra musical en cuestión pertenece a sus hijos instituidos herederos en el mismo.

En cuanto a la peticionaria se refiere, del propio testamento se desprende con meridiana claridad que don Guillermo le otorgó el tercio de libre disposición por completo a ésta. El mismo sería pagado con un inmueble de su propiedad sito en Quebradillas. Dicha disposición testamentaria constituye un legado hecho a cuenta de su legítima. *Moreda Toledo v. Rosselli,* Op. de 18 de octubre de 1996, **96 J.T.S. 131.**

### III

Por los fundamentos antes expuestos, denegamos la expedición del auto solicitado y devolvemos el caso al hermano foro de instancia para ulteriores procedimientos.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General